Peck, J.
The plaintiff in error has made twelve special assignments and one general assignment of error upon the record, on which he asks a reversal of the judgment and sentence ; but in the argument presented to us, he only relies *151 upon the following points, which embrace, substantially, all the special assignments:
1. The court erred in overruling the demurrer to the indictment for duplicity.
2. The court erred in passing sentence on the defendant, upon a verdict which responded to only one of the charges made in the indictment.
3. The court erred in its charge to the jury.
4. The verdict is contrary to the law.
5. The verdict is contrary to the evidence.
The first and second points may very properly be considered together.
The general rule undoubtedly is, that two distinct crimes or offenses, can not properly be joined in the same count of an indictment, and that such joinder will be fatal on demurrer or on motion to quash (Wharton’s C. L. 192, and cases cited) ; but this rule is, by no means, of universal application, and one of the exceptions, as well established as the rule itself, is, that a burglary and larceny, committed at the same time, may be thus united. Wharton’s C. L. 192, 614.
In such case the burglarious entry with intent to steal, and the consummation of that intent by actual theft, are so connected, that.the two crimes may be charged in the same count, in order, it is said, to convict of the one on a failure to establish the other. Wharton’s O. L. 614; 1 Hale P. C. 560; King v. Withall, 1 Leach C. C. 102.
It is said, indeed, in Stoops and another v. Commonwealth, 7 Ser. & Rawle, 499, that only one offense is charged in such indictment, “ and that is burglaryand in Rex v. Withall, 1 Leach C. C. 102, that the larceny is merged in the burglary. It is nevertheless clear, that if acquitted of the burglary, the prisoner may be convicted and sentenced for the larceny. Commonwealth v. Tuck, 20 Pick. 360; State v. Cocker, 3 Harr (Del.) 534; State v. Grisham, 1 Hayw. (N. C.) 17; Roscoe Or. Ev. 367. It is said, however, in State v. More, 12 N. H. 44, that by conviction of the burglary, works the merger, and with this qualification, the cases in Sergeant and Rawle and in Leach suvra, harmonize with the cases above cited, which *152 authorize a conviction for the larceny if acquitted of the burglary, and also with Commonwealth v. Hope, 22 Pick. 10; Jopley v. Commonwealth, 6 Metc. 240, and State v. More, 12 N. H. 44, which determine, that where the two offenses are included in the same count, the prisoner, on a general verdict of guilty, can be sentenced for the burglary but not for the larceny.
The result deducible from these principles and authorities is: 1. That the indictment was not faulty for duplicity, and the demurrer for that cause, was properly overruled. 2. That upon a verdict of “ guilty of the burglary in manner and form,” etc., the court might legally proceed to sentence for that crime, without awaiting a response to the charge of petit larceny. The public justice was not injuriously affected by a failure to find the defendant guilty of that offense, because, as we have seen, no sentence could have been passed upon the defendant for it, after conviction for the burglary; and the legal rights of the defendant were in no sense compromised, as a verdict of acquittal of the petit larceny could not in any way affect the verdict of guilty of the burglary. The two offenses, though connected in their perpetration, are distinct. A burglarious entry with the felonious intent, already found by the jury, completed the burglary, while the felonious asportation of the goods would establish the larceny, irrespective of the manner in which the defendant gained access to the place where they were deposited.
3. Did the court err in that portion of its charge to the jury which is stated in the bill of exceptions ?
This part of the charge relates, exclusively, to a theory, started no doubt in the argument and in view of a portion of the testimony, as to what would constitute a constructive presence of the defendant, if the jury should find, that he was bodily absent, when the breaking and entry were accomplished. What the court may have said as to the statutory ingredients • of the crime of burglary, and in their comments upon the testimony in the cause, connecting the defendant personally with the burglary, and as to the presumptions arising from the possession of a part of the goods taken at the time, and the *153 defendant’s conduct, statements and demeanor respecting them, detailed in the testimony, is not stated in the bill of exceptions, and we must "therefore presume that what the court did say was ample and unexceptionable.
The charge, which is copied into the statement of the case, and which, on account of its length, I do not propose to repeat here, was, substantially, that if the jury should find, beyond a reasonable doubt, from the testimony, that the defendant had agreed with others to commit the burglary, on the night on which it was done, and that, as a part of said agreement, and to facilitate the breaking and entry and lessen the chances of detection, it was agreed that the defendant should on that night, procure or decoy the owner, Whetstone, away from the store in which he usually slept, to a party, about a mile distant, and detain him there, while the other confederates were to break and enter said store, and remove the goods, and that both parties did, in fact, perform their respective parts of said agreement, that then the defendant was constructively present at the breaking and entry by his confederates, and might be convicted as principal therein, if all the other material allegations were proved beyond a reasonable doubt.
We are free to say that this charge, if there was evidence tending to prove it, is unexceptionable.
“ Any participation in a general felonious plan, provided such participation be concerted, and there be a constructive presence, is enough to make a man principal in the second degree.” Wharton’s C. L. 113, and the case cited by Wharton to establish the rule shows what is meant by a “ constructive presence.”
“ If several act in concert to steal a man’s goods, and he is induced by fraud to trust one of them in the presence of the others, with the possession of such goods, and another of them entices him away, that the man who has the goods may carry them off, all are guilty of the felony.” Rex v. Standley and others, Russ, and Ry. C. C. 305.
The defendant was, by the agreement, not only to procure Whetstone to go to the party “ to give his confederates greater security from detection while in the act of breaking into the *154 store,” but the jury were required to find, as a part of the supposed case, that the defendant “ kept him there, while his confederates were engaged in breaking said store, and in concealing the fruits of said crime in pursuance of said previous confederacy
The charge would therefore seem to fall within the well-known rule stated in Archbold C. L. lOj “ that persons are said to be present, who are engaged in the same design with the one who actually commits the offense, although not actually present at the commission of it, yet are at such convenient distance as to be able to come to the assistance of their associates if required, or to watch to prevent surprise or the like.”
Bishop, in section 460, vol. 1, of his Treatise upon Criminal Law, says : “ If the will of such other one contributed to the act, the test to determine whether the law deems him a principal rather than an accessory is, whether he was so near, or otherwise so situated,, as to make his personal help, if required, to any degree available.”
The part assigned by the agreement to the defendant — a constant supervision over Whetstone while the burglary was effected — formed an essential part of the plan of the burglary agreed upon, as much so as the rending of the shutter, or the forcing of the door. And the defendant, in the case supposed, was constructively present at the burglary, if Jones who, in the case from Russ, and Ry. supra, enticed McLaughlin away, was constructively present at the subsequent asportation of McLaughlin’s money, by his confederates, Standley and Webster.
So, in Hess v. The State, 5 Ohio 12, it is said: “ And. in. general, if several unite in one common design, to do some unlawful act, and each takes the part assigned him, though all are not actually present, yet all are present in the eye of the lawciting Foster, 450, 853; 1 Hale’s P. C. 439 ; 2 Starkie’s Ev. 7.
But it is said that there was not any evidence before the jury as to a confederacy between the defendant and other persons, and that the' charge, assuming such an agreement as *155 possible, was entirely unsupported by evidence and should not therefore have been given.
It is doubtless true, that the judge should not charge the jury upon a hypothetical case, entirely without the testimony, because such a course is calculated to mislead the jury and induce them to suppose that such a state of facts, in the opinion of the court, was possible under the evidence and might be considered by them. But where there is any evidence, tending to prove the fact which the charge assumes, the court may properly make it the subject of comment.
In the case before us, there were facts and circumstances in evidence, which, if true, tended in some degree, to prove such confederacy. As, for instance, the frequent and persistent efforts of the defendant, to induce Whetstone to go to the party after he had declined to do so. His turning back for a while, when Whetstone joined the others on the way. His leaving the party several times during its continuance, and on one occasion, for more than an hour and a half. His continued and boisterous hallooing while returning from the party, toward the store and in company with Whetstone, just before the burglary was discovered. The testimony of Gregory, who accompanied the defendant and others on their return from the party, shows that after leaving them, some at Calvin’s house,, the others at the store, and on the top of the hill beyond, he being then alone, started on a run, and at the distance of about a half a mile beyond the store, he found in the road two pieces of cloth,- one of satinet and the other of tweed, identified by Whetstone and Calvin, as having been taken from the store on the night of the burglary, which finding was immediately preceded by a noise as of persons running rapidly through the brush and woods skirting the road, indicating that others, connected with the burglary, had been frightened and were escaping pursuit. And defendant’s statement to Octter, “ that he knew how he got the goods but dare not tell.” If these facts were not sufficient, in view of countervailing proof, to establish a confederacy, they, at least tended to prove it, and thereby rendered the charge pertinent *156 to the testimony, and one, therefore, fully within the province of the court to give to the jury.
Lastly, it is said, that the verdict is contrary to the evidence, but before we can reverse a judgment for this reason, it must be clearly so.
The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credibility and effect of the testimony, and we ought, therefore, to hesitate before disturbing a verdict, rendered by a jury and confirmed by a court, possessing such advantages, merely because, there is an apparent conflict in the testimony. The conflict or its effect, might all disappear, if the witnesses" were examined before us and we could see and hear them face to face, as they were seen and heard by the court and jury whose verdict and judgment are passing in review before us. •
We have carefully reviewed all the testimony submitted to the jury, consisting of some thirty-six manuscript pages, and while we find some conflict in the testimony, we are by no means prepared to say, that the defendant was not rightly convicted as principal in the burglary.
The burglary was clearly proved on the trial, and some of the articles traced to the possession of the defendant four weeks thereafter, and as to which he gave various and conflicting accounts, were also proved to have been taken from the store on the night of the burglary. The store of Whetstone was only one mile distant from the place where the party was held, and if the defendant absented himself from the party, for the periods stated by the witnesses for the state, or for a reasonable approximation thereto, he had ample time within which to perpetrate the burglary himself, and a much shortei time would suffice, if the theory of the charge objected to is true, which the abandoned pieces of satinet and tweed, and the loud hallooing while approaching the store from McGhee’s, would seem to indicate. The defendant, it is true, produced testimony to the jury, tending to shorten the periods of his absence from the party and account for some though not for all of them. This testimony does not impress us very favor *157 ably, and it may be, that the jury, who heard and saw the witnesses, may have disregarded it altogether.
The false and contradictory statements of the defendant, as to the place where, the persons from whpm, and the circumstances under which, he obtained the knives and silk handkerchiefs taken from the store, are significant. At times, he purchased them at Iiamden; at others, in McArthur; and again, at Yinton Furnace; at other times, they were bought of Merrill; and at others still, from Whetstone. The burglary was effected, and these articles taken, on the night of the 31st day of August, 1859; and he was thus offering, them for sale, in the latter part of September or forepart of October following, a period of from four to .five weeks. He admitted to Pearce that he had the same articles while staying at his house, and this may have been earlier than the times they were thus exposed for sale, as it is proved that he made that place his home both before and after the burglary.
About the 1st of November, James Calvin saw in the defendant’s possession, a box of the precise marks and description of that in which the knives had been kept, and which was taken with them, and he requested to see the box again, but defendant said he had parted with it. The possession of one or more articles like pocket-knives, though of a somewhat costly description, four or five weeks after the burglary, were this all, would not perhaps be very conclusive proof of a participation in the burglary, and his contradictory statements of the persons and places, from whom and at which, they were purchased by him, would also be as consistent with the conduct of a guilty receiver as that of a conscious burglar. Still, these facts, when combined with the number and condition of the articles, six costly knives with the box in which they had been kept, and a piece of six silk handkerchiefs, and a total failure to account for that possession, together with the circumstances already alluded to, as connecting him, personally, with the burglary itself, would seem to prove that the defendant is guilty of the graver offense. At all events, in view of the testimony, thus aggregated, we *158 can not say that the verdict is contrary to the law or the evidence.
Judgment affirmed.
Scott, C.J., and Sutliee, Gholson and Brinkerhoee, J J., concurred.